# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANTA PIZARRO,** | : | Civil No. 3:20-CV-511 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

The plaintiff, Shanta Pizarro, has brought the instant civil action against multiple defendants in their individual capacities, all of whom are employed by the Pennsylvania Department of Corrections ("DOC"). These defendants include three correctional officers at the State Correctional Institution at Dallas ("SCI Dallas"), Defendants Gardazalla, Bradley, and Reese; a Lieutenant at SCI Dallas, Defendant Eyer; the Superintendent of SCI Dallas, Defendant Mahally; and the Secretary of the Pennsylvania DOC, John Wetzel.

Pizarro's complaint seeks monetary damages and declaratory relief for alleged violations of her constitutional rights pursuant to 42 U.S.C. § 1983 in connection with an incident she experienced at SCI Dallas. (Doc. 17). Specifically, Pizarro claims that her Fourth and Fourteenth Amendment rights were violated when correctional staff conducted a strip search, vehicle search, and a search of her cellular

1

phone when she attempted to visit her boyfriend, Edward Woods, who is currently an inmate at SCI Dallas. (Id.)

Pending before the court is a motion to dismiss filed by the various supervisory defendants, Defendants Wetzel, Mahally, and Eyer, which argues that the plaintiff's complaint fails to state a claim for supervisory liability under §1983. (Doc. 22). In response, the plaintiff relies in large part upon Department of Corrections policy, DC-ADM 812(3)(B)(6), to assert that defendants Wetzel, Mahally, and Eyer acquiesced in conduct that she claims systematically deprives visitors to the DOC of their constitutional rights. (Doc. 25).

Notably, according to the plaintiff, the DOC policy cited in her complaint forbade searches like the search conducted in the instant case. (Doc. 1, ¶ 14). Thus, Pizzaro alleges that the cations which took place at the prison violated the policies prescribed by prison supervisors. Nonetheless the plaintiff seeks to impose supervisory liability upon those officials whose policies were allegedly violated because Pizarro alleges that the DOC has a conflicting system of policies—one "public" and one "highly confidential"—that these defendants implemented and participated in, thereby imputing to them the necessary degree of knowledge to support a claim of supervisory liability. (Id.) Pizzaro advances this claim that there exists a surreptitious policy to violate the Constitution which contradicts the publicly stated DOC policy in a conclusory fashion without any well-pleaded supporting

2

facts. (Id. ¶¶ 100-111). For their part, the defendants contend that the plaintiff's complaint contains "nothing but conclusions devoid of further factual enhancement and a formulaic recitation of the elements of a cause of action." (Doc. 23).

After consideration, we find that the plaintiff has failed to allege sufficient facts to support her claims that defendants Wetzel, Mahally and Eyer had any actual knowledge of either her search, or of any other searches that allegedly amount to a repeated pattern of deprivation of constitutional rights. At their core, Pizarro's claims consist of bald assertions of *respondeat superior* liability, coupled with dissatisfaction at the DOC's policy formulation process and implementation. Therefore, for the reasons set forth below, we will grant the motion to dismiss.

## II.     STATEMENT OF FACTS

On March 26, 2018, Pizarro attempted visit her boyfriend, Edward Woods, at SCI Dallas, where he is currently confined. (Doc. 17). After going through the usual measures of facility security, Pizarro was approached by Defendants Gardazalla and Bradley and escorted to a separate location for questioning. (Id., at 4). Pizarro was brought to a private room in the Administration Building, where she was informed by Gardazalla and Bradley that they had monitored her emails and calls with Woods, as well as activity on her JPay account. (Id., at 5).

Gardzalla and Bradley then questioned Pizarro about whether she had brought narcotics into the facility, specifically synthetic marijuana and suboxone. (Id.)

Additionally, Pizarro was questioned regarding various money transfers she sent, as well as money transfers that were sent to her from Woods. (Id., at 6). Pizarro answered all questions and insisted that she was not involved with smuggling contraband into SCI Dallas. (Id.) She stated that the transfers between herself and Woods were in made connection with his poker games, not criminal activity. (Id.)

Pizarro contends that she was told by Gardazalla and Bradley that she must either comply with their requests to search her and answer their questions, or she would be arrested. (Doc. 17, at 5). Importantly, Pizarro alleges that she did not feel free to decline to answer their questions and their later request that she be strip searched for fear of arrest. (Id.) As a result, she felt forced to agree to the search, even though she "did not consent." (Id., at 6). Pizarro was then strip searched by correctional officer Melynda Reese, and her vehicle and phone were searched as well. (Id., at 6-8). No contraband was found on her person, in her car, or on her phone. (Id., at 7-9). Ultimately, Pizarro was denied visitation with Woods after being questioned and searched, and she left the facility. (Id., at 9).

Following these events, Woods filed a grievance with SCI Dallas officials regarding what he felt was the unwarranted the search of Pizarro. (Id.) Defendant Eyer denied this grievance on the grounds that Woods did not have standing to bring a grievance for events that involved Pizarro, and that Pizarro had consented to be

searched. (Id.) Woods appealed Eyer's decision but ultimately, Defendant Mahally dismissed his grievance and took no further action. (Id., at 10).

Subsequently, Pizarro filed this suit in the United States District Court in the Eastern District of Pennsylvania, and this lawsuit was subsequently transferred to this Court. After the plaintiff amended her complaint, the defendants filed the instant motion to dismiss. (Doc. 22). Pizarro is seeking to hold each defendant personally liable, and seeks $150,000 in punitive and compensatory damages from each defendant. (Doc. 17, at 14). However, after review, we find that the plaintiff has failed to state a claim against these supervisory defendants under the exacting standards prescribed by case law. Therefore, we will grant the defendants' motion and dismiss Defendants Wetzel, Mahally and Eyer from this action.

### III. STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

> District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.  DISCUSSION

The plaintiff asserts that her Fourth and Fourteenth Amendment rights were violated when she was subjected to a strip search, vehicle search, and a search of her cellular phone while attempting to visit Edward Woods, an inmate at SCI Dallas. (Doc. 17). Specifically, she states that the defendants acted in "concert and conspiracy" to deprive her of her "civil and constitutional rights." (Id., at 10). With respect to the supervisory officials named in this complaint, there is no allegation that they participated in this conduct, or directly and specifically approved or acquiesced in these particular actions. Instead, Pizarro argues that Defendants Wetzel, Mahally and Eyer are "directly liable and responsible for the acts of individual defendants because . . . they repeatedly and knowingly failed to enforce the laws and guidelines of the Commonwealth of Pennsylvania and the [DOC] policy, pertaining to strip searches of visitors . . . thereby creating an atmosphere of lawlessness." (Id., at 11). In effect, the plaintiff is articulating a theory of supervisory liability as to her claims against these defendants. As part of this theory of liability, Pizarro cites what she perceives as the defendants' failure to oversee their subordinates and their "reckless and deliberate indifference." (Id.)

The defendants argue that Pizarro has not meet the required pleading standard as her complaint contains "only [a] formulaic recitation of the elements of a cause of action". (Doc. 23). Additionally, the defendants note that the plaintiff has not

10

alleged any facts to show that they had either actual knowledge of her search, or were aware of or endorsed any pattern or practice by subordinates that systematically deprived visitors to DOC facilities of their constitutional rights. (Id.)

## A. Section 1983 Standard of Review

Section 1983 provides a private cause of action for the violation of a federal constitutional right. The text of the statute provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. In order to prevail on a § 1983 claim, a plaintiff must establish that the defendant deprived the plaintiff of a right secured by the United States Constitution while acting under color of state law. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

The defendants in this case argue that the plaintiff has failed to plead allegations of their direct, personal involvement with the events at issue. Indeed, to state a § 1983 claim against supervisory defendants, a plaintiff must show that these supervisory defendants actively deprived her of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 , 907 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 , 4 , 100 S. Ct. 2502 , 65 L. Ed. 2d 555 (1980). It is

well settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Applying these benchmarks, courts have frequently held that, without allegations of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, at *21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004).

With respect to supervisory liability claims, the Third Circuit has noted that "[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012) (internal quotations and citations omitted). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. On this score, there are two theories of supervisory liability which the Court of Appeals has recognized:

> [O]ne under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly cause [the] constitutional harm" and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne

12

Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original).

Santiago, 629 F.3d at 129.

To incur liability as a supervisory official, it "is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). The imposition of liability in a § 1983 action relies on a showing by the plaintiff that the defendants had "personal involvement in the alleged wrongs." Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)). Importantly, a plaintiff "cannot predicate defendants' liability on a *respondeat superior* theory." Id.

Rather, as we have explained, to state a valid cause of action, the plaintiff must demonstrate the defendants' "personal involvement in the alleged wrongs." Chavarriaga, 806 F.3d at 222 (quoting Rode, 845 F.2d at 1207) (internal quotations omitted). To set forth sufficient allegations of defendants' personal involvement, the plaintiff must describe "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Id. Allegations of constructive knowledge are not enough. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir.1995); Rode, 845 F.2d at 1201 n. 6. Instead, a plaintiff "must portray specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

13

Therefore, the determinative question in this case is whether the defendants had actual knowledge, or knowledge of a pattern or practice of searches similar to Pizarro's, such that a claim of supervisory liability can proceed. To be clear, under current Third Circuit law, to find the defendants liable under a supervisory official theory, there must be both contemporaneous actual knowledge of the offending incident or actual knowledge of a prior pattern of similar incidents, and, circumstances under which the supervisor's actions could be found to have communicated a message of approval to the offending subordinate. Chavarriaga, 806 F.3d at 222. It is worth noting again that a theory of *respondeat superior* is a not a sufficient basis for imposing liability on supervisory defendants. Id.

## B. These Defendants Will Be Dismissed.

Despite Pizarro's apparent dissatisfaction with the way that the DOC creates and implements policy, she has not alleged any facts to support her claims against Defendants Wetzel, Mahally, and Eyer. First, the plaintiff's complaint contains no factual allegations suggesting that the defendants, in their supervisory capacities, had knowledge of and acquiesced in their subordinates' specific actions in this case. Santiago, 629 F.3d at 129. Additionally, Pizarro's theory of supervisory liability is not supported by any well-pleaded factual allegations to support her assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm." Id. Absent any supporting factual

14

allegations by the plaintiff, this Court cannot infer that the defendants had the requisite knowledge for supervisory liability to be found under § 1983. Likewise, as we have explained, *respondeat superior* is not sufficient theory to impute liability to the defendants. The insufficiency of Pizarro's factual allegations becomes clear when examining her claims as to each defendant.

Regarding Defendant Wetzel, it is evident that he was named in this action solely for his supervisory role in the Pennsylvania DOC. Pizarro's complaint does not allege any facts to show that Wetzel had actual knowledge regarding her search by correctional officers. (Doc. 17). While Pizarro claims that Wetzel, as Secretary of the DOC, helped to create and implement the DOC's policies, she does not allege that Wetzel knew of, approved of, or acquiesced in the searches in question.

Moreover, Pizarro has not alleged sufficient facts to support her assertion that Wetzel was aware of, and complicit in maintaining a policy or practice which directly caused constitutional harm. The fact that Wetzel is involved in formulating and issuing a DOC policy is not sufficient to show that he is aware of or complicit in a systematic deprivation of the rights of visitors to correctional institutions. In framing the theory of supervisory liability in this way, the plaintiff seems to be taking broader issue with the way that DOC policy is created. In the past, courts have acknowledged that liability under § 1983 may be imposed on officials with the final policymaking authority, if that official creates an unconstitutional policy that injures

a plaintiff when it is implemented. Chavarriaga, 806 F.3d at 223 (citing Sample, 885 F.2d at 1118). However, to establish this type of § 1983 claim against a policymaker, a plaintiff must allege and prove that the policymaker established or enforced policies directly causing the deprivation of constitutional rights. Id. That is not the case here. Pizarro's amended complaint does not contain facts to support that Wetzel created or enforced an unconstitutional policy which has directly caused the deprivation of constitutional rights. (Doc. 17).

Pizarro repeatedly asserts that SCI Dallas and the DOC have a policy that explicitly prohibits strip searches of visitors under any circumstance. (Doc. 25). She claims that defendant Wetzel has "affirmatively mislead the Commonwealth citizenry" by publishing certain DOC policies while privately instructing his subordinates to ignore them. (Id.) However, Pizarro has not alleged any facts to support her conclusory assertion that Wetzel has implemented two contemporaneous policy mandates, one of which adheres to constitutional benchmarks while the second surreptitious policy instructs subordinates to take actions that are potentially in violation of the Constitution, and that ultimately led to her search. Rather, she asserts conclusory allegations that Wetzel, as Secretary of the DOC, is responsible for implementing policies and thus, he should be liable for the alleged violations of Pizarro's constitutional rights. Moreover, she alleges, with no well-pleaded factual

support, that the DOC has a pattern of illegally strip-searching visitors. This is simply not enough to state a supervisory liability claim against Defendant Wetzel.

The plaintiff's allegations against defendants Mahally and Eyer are similar in nature. Pizarro implies that Mahally is subject to supervisory liability under § 1983 as he "implemented, distributed and enforced" DOC policies throughout the prison. (Doc. 25). Likewise, the plaintiff contends Eyer may incur liability for his role in "monitor[ing], at least minimally," DOC policies in his capacity as a grievance officer. (Id.) However, the factual allegations against these defendants in the plaintiff's amended complaint seem largely confined to their involvement in the dismissal of Woods' grievance regarding Pizarro's treatment, and Mahally's decision not to discipline any officers involved. (Doc. 17). The defendants highlight this when noting that the "sole allegations against Mahally and Eyer" seem to be "that they participated in the grievance process." (Doc. 23). The grievance at issue was denied by both Mahally and Eyer because it was brought by Woods, who they determined did not have standing to bring a grievance on behalf of a visitor.

However, even if defendants Eyer and Mahally had improperly denied Woods' grievance, in the past, this Court has held that an inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to fully investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F.

17

App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641 , 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable); see also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern").

Moreover, the Third Circuit has held that summary dismissal of these types of claims are appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011) (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375 , 382 (2d Cir. 1973)). Because there are no other supporting allegations to show that Mahally and Eyer either had knowledge of or acquiesced in a systematic practice of deprivation of constitutional rights, they cannot incur supervisory liability under § 1983.

In sum, Pizarro's claims against Defendants Wetzel, Mahally, and Eyer amount to little more than allegations of *respondeat superior*, which we have explained are insufficient to state claims against these officials under § 1983. Moreover, Pizarro may not bring claims against these officials based solely upon their participation in the grievance process. Thus, we find that Pizarro's claims against these supervisory defendants fail as a matter of law. Accordingly, we will grant the motion to dismiss and dismiss Defendants Wetzel, Mahally, and Eyer from this suit.

## V.  **CONCLUSION**

Accordingly, for the foregoing reasons, we find that the plaintiff has failed to state a claim against defendants Wetzel, Mahally, and Eyer. Thus, we will GRANT the defendants' motion to dismiss (Doc. 22) and dismiss these defendants from this suit.

An appropriate order follows.